UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARVISE D. RENNALLS

_____

Write the full name of each plaintiff.

_____ CV _____

(Include case number if one has been assigned)

-against-

VILLAGE OF OSSINING - 16 CROTON AVE.,
OSSINING, NY 10562

KEVIN SLYVESTER - 15 STONE AVENUE,
OSSINING, NY 10562

Write the full name of each defendant. The names listed
above must be identical to those contained in Section I.

Do you want a jury trial?

☒ Yes    ☐ No

# EMPLOYMENT DISCRIMINATION COMPLAINT

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

Rev. 3/24/17

## I.    PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Marvise | D'Ann | Rennalls |
|---|---|---|
| First Name | Middle Initial | Last Name |

| 609 Depew Street | | |
|---|---|---|
| Street Address | | |

| Westchester, Peekskill | New York | 10566 |
|---|---|---|
| County, City | State | Zip Code |

| 914-354-7498 | Shakira642@icloud.com |
|---|---|
| Telephone Number | Email Address (if available) |

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

Town/Village of Ossining

Name
16 Croton Avenue

Address where defendant may be served

| Westchester, Ossining | New York | 10562 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:

Kevin Slyvester

Name
15 Stone Avenue

Address where defendant may be served

| Westchester, Ossining | New York | 10562 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

_____

Name

_____

Address where defendant may be served

| | | |
|---|---|---|
| County, City | State | Zip Code |

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

**Village of Ossining Police Department**

Name

**609 DEPEW STREET**

Address

| | | |
|---|---|---|
| Westchester, Ossining | New York | 10562 |
| County, City | State | Zip Code |

## III.    CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☒    **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☒    race:          African-American

☐    color:          _____

☐    religion:          _____

☒    sex:          Female

☒    national origin:          _____

Page 3

☒ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is:    **Black** _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is:  **Auto-immune dificiency, a** ___

☒ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is:  **Auto-immune dificiency, a** ___

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.  Other Claims

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☐ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

## IV.    STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

☐  did not hire me

☐  terminated my employment

☐  did not promote me

☒  did not accommodate my disability

☒  provided me with terms and conditions of employment different from those of similar employees

☒  retaliated against me

☒  harassed me or created a hostile work environment

☒  other (specify):    Kevin Slyvester intentionally placed my life endan

### B.   Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

SEE ATTACHED: A -  EEOC CHARGE OF DISCRIMINATION - DATED 8/11/2020

B-  DECLARATION OF ALLEGATIONS - DATED 8/11/2020

C - RIDER TO EEOC CHARGE OF DISCRIMINATION - DATED 8/12/2020

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

    ☒  Yes (Please attach a copy of the charge to this complaint.)

        When did you file your charge?  MAY 11, 2020

    ☐  No

Have you received a Notice of Right to Sue from the EEOC?

    ☒  Yes (Please attach a copy of the Notice of Right to Sue.)

        What is the date on the Notice?    1ST. RTS DATED 12/4/2024, RE-

        When did you receive the Notice?    12/8/2024

    ☐  No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

    ☐  direct the defendant to hire me

    ☐  direct the defendant to re-employ me

    ☐  direct the defendant to promote me

    ☐  direct the defendant to reasonably accommodate my religion

    ☐  direct the defendant to reasonably accommodate my disability

    ☒  direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

SEE ATTACHED CONCILATION LETTER SUBMITTED TO INVESTIGATOR DENG-BATISTA - 1/23/2023 PER REQUEST.

## VII.  PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 02/25/2025 | | |
|---|---|---|
| Dated | | Plaintiff's Signature |
| MARVISE | D | RENNALLS |
| First Name | Middle Initial | Last Name |
| 609 DEPEW STREET | | |
| Street Address | | |
| WESTCHESTER, PEEKSKILL | NEW YORK | 10566 |
| County, City | State | Zip Code |
| 914-354-7498 | | Shakira642@ICLOUD.COM |
| Telephone Number | | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7

**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1.  I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2.  I have established a PACER account;

3.  I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4.  I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5.  I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6.  I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents. I must file consent forms for those cases.

### Civil case(s) filed in the Southern District of New York:

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

Marvise Rennalls v. Village of Ossining Police Department

---

## RENNALLS, MARVISE,  D'AN

Name (Last, First, MI)

| | | | |
|---|---|---|---|
| 609 DEPEW STF PEEKSKIL | | New York | 10566 |
| Address | City | State | Zip Code |
| 914-354-7498 | | Shakira642@icloud.com | |
| Telephone Number | | E-mail Address | |
| February 25, 2025 | | | |
| Date | | Signature | |

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007



**U.S. Department of Justice**

Civil Rights Division

KC:MLB:KLF
DJ 170-51-0

*Employment Litigation Section – 4CON*
*150 M Street, NE*
*Washington, DC   20530*
*www.usdoj.gov/crt/emp*

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL                                       December 4, 2024

Ms. Marvise D. Rennalls
c/o Luna Droubi, Esq.
Law Office of Beldock, Levine & Hoffman
99 Park Avenue, PH 26th FL
New York, NY   10016

> Re:     Marvise D. Rennalls v. Village of Ossining Police
>         Department, et al., EEOC Charge No. 520-2020-04854

Dear Ms. Rennalls:

It has been determined that the Department of Justice will not file suit on the above-referenced charge of discrimination that was referred to us by the Equal Employment Opportunity Commission (EEOC).   This should not be taken to mean that the Department of Justice has made a judgment as to whether or not your charge is meritorious.

You are hereby notified that conciliation in this matter was unsuccessful by the EEOC.   You are further notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq., against the above-named respondent.   If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.

The files in this matter are located at the EEOC's New York District Office.   If you or your attorney have any questions concerning this matter or wish to inspect the investigative files, please feel free to address your inquiry to:   Yaw Gyebi, Jr., District Director, EEOC, 33 Whitehall St., 5th Floor, New York, NY 10004.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

By:     *Meredith L Burrell*

Meredith L. Burrell
Principal Deputy Chief
Employment Litigation Section

cc:     Marvis D. Rennalls
        Village of Ossining Police Dept. c/o J. Goldberg, Esquire
        EEOC, New York District Office



**U.S. Department of Justice**

Civil Rights Division

KC:MLB:KLF
DJ 170-51-0

*Employment Litigation Section - 4CON*
*150 M Street, N.E.*
*Washington, DC   20530*
*www.usdoj.gov/crt/emp*

### NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL                                            December 13, 2024

Ms. Marvise D. Rennalls-Rainey
609 Depew St.
Peekskill, New York 10566

> Re:     Marvise D. Rennalls-Rainey v. Village of Ossining Police
>         Department, et al., EEOC Charge No. 520-2020-04854

Dear Ms. Rennalls-Rainey:

It has been determined that the Department of Justice will not file suit on the above-referenced charge of discrimination that was referred to us by the Equal Employment Opportunity Commission (EEOC).   This should not be taken to mean that the Department of Justice has made a judgment as to whether or not your charge is meritorious.

You are hereby notified that conciliation in this matter was unsuccessful by the EEOC.   You are further notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq., against the above-named respondent.   If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.

Therefore, you should consult an attorney of your own choosing at your earliest convenience.   If you are unable to locate an attorney, you may wish to contact the EEOC, or apply to the appropriate court, since that court may appoint an attorney in appropriate circumstances under Section 706(f)(1) of Title VII, 41 U.S.C. 2000e-5(f)(1).

If you or your attorney have any questions concerning this matter or wish to inspect the investigative file, please feel free to address your inquiry to:   Yaw Gyebi, Jr., District Director, EEOC, 33 Whitehall Street, 5th Floor, New York, NY 10004.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

By:     *Meredith L Burrell*

Meredith L. Burrell
Principal Deputy Chief
Employment Litigation Section

cc:    Village of Ossining Police Dept., et al. c/o Lance Klein, Esq.
       EEOC, New York District Office

## Re: Marvise Rennalls CF RTS letter

From: marvise rainey (christylove155_08@yahoo.com)

To:    karen.ferguson@usdoj.gov

Date: Thursday, December 5, 2024 at 03:10 AM EST

Ms. Ferguson,

The right to sue is inaccurate therefore I can not acknowledge.

I have serious concerns over the fact that after almost 5 years later of filing the EEOC charges the DOJ Civil Rights division has issued a right to sue after only receiving the case in October of 2024. What was this decision based on? Was my case even reviewed in the two months that your division (you) received the case? It is a fact that the information you have is inaccurate. The attorneys that are noted in this letter are both inaccurate. The respondents' counsel noted in this right to sue letter has not been involved (or representing the employer for over 4 years). The right to sue is inaccurate. Jacklyn Goldberg was arrested for conspiracy to commit murder. In 2019, my attorney (Elisabeth Hunter) who filed the original charges 2020 has been deceased. She attempting to mediate with the respondent's counsel a full year prior to filing the charges. I have emails between Ms. Hunter and Ms. Goldberg that demonstrate the Village's lack of good faith effort in mediating the matter that was formally brought to their attention. To say the least, it is obvious Goldbergs' concerns for her duties did not fall on the side of justice during that timeframe. The EEOC case notes should have state these facts as I made them aware of them years ago. Also note that the EEOC portal was consistently malfunctioning, not uploading documents, etc. So I continually and constantly reached out to the Investigator handling my charges via direct email and/or phone messages. At one point I had to make a complaint due to the Investigators lack or response. To say the least my due process was never in a timely manner.

I had to fight for my rights. I am the head of household, with three daughters to raise and a mortgage to pay. The Chief of Police violated my autistic daughters HIPPA rights by forcing me to sign two HIPPA RELEASE FORMS or face retaliatory charges. I had over 20 years of service when this nightmare began. When I became the senior patrol officer of the department is when the Chief of Police decided that the only black female officer was not going to be up for any and all overtime, matron duty, translator, hostage negotiator, special off duty overtime assignments which were all based on seniority. The fact that I would be making more money than the junior officers was intolerable to him. However, all the previous senior male officers were all allowed to work any and all the overtime that was available in preparation for their retirement at that job. The Village of Ossining allowed the Chief of Police to strategically and systematically target me because I was an African American female in the senior patrol position. The hostile work environment that he created was horrific. He even made a statement at morning briefing to fellow officers' not to trust Marvise Rennalls because she has retained a lawyer, and she may be recording what you say. This in a police environment is a death sentence. He put my life in jeopardy! A supervisor reported this to me. Witnesses' statements noted that Kevin Slyvester would say "she is just a black female, nobody will believe her" were freely spoken around HQ. Kevin Slyvester began targeting me prior to my 20 years of service by telling a group of community members at a public, non-police event, that I and another Spanish speaking officer would soon be retiring that year. This was in 2016. When I was made aware of this, I reached out immediately to the Chief of Police so that there was no misunderstanding, I was in no way planning to retire. He made it his mission to retaliate against me and force me out by any means necessary. Once he began attacking me the others fell in line. I was the target and the Village of Ossining was culpable for the actions taken against me. I was forced out because I am a black woman in a white male dominated police department. I know the sacrifices made by the many who died for these rights that we continue to fight for.

I also understand that you only just recently received my case for review (I kept continual contact with the EEOC when they held the case). You received my case in late October 2024. I filed these EEOC charges in May 20, 2020. I received a letter of determination that was dated 2023. A year later a letter of failure to conciliate was sent to me in June, 27, 2024 advising me that the case would be forwarded to DOJ. It is now just 2 months later and inaccurate Right to Sue is issued. Based on the right to sue information contained I question exactly how accurate the entire investigation was conducted. Therefore, I request a thorough review of my case be conducted.

Although my case may not be unique, it deserves to be accurately followed-up.
I was also the only African American female police officer EVER hired by the Village of Ossining Police Department since its inception in 1812. I might add that since I was discriminated against and forced to retire, this municipality has not hired another female of color since. Based on all the evidence submitted and the findings of the EEOC investigation

which included witnesses' statement clearly shows that this agency does not fear any reprisal from any federal agencies in place to protect American civil rights. At the very least the DOJ should bring to light what the agency stands for. I demand the right to have my case be properly followed up on and resolved in a court of law. What I was subjected to, no person should suffer.

My health, my family, my career and my financial stability was destroyed. I served my community for over 25 years and I did so without violating anyone's civil rights. It is clear that the Village of Ossining had no interest in protecting me. I went to them a year prior to filing the EEOC charge to make them aware of the retaliatory actions being exacted upon me. They did nothing. I never received any support from PBA members and I never had any disciplinary charges ever in my career filed against me.

Every day I would sit in the briefing room prepared to protect and serve the public. I am now asking for that same protection. I respect the system that is in place. I also expect due process. It has been almost 5 years that the Village of Ossining has demonstrated that it has no respect for the federal laws put into place to protect its employees. I was the first and only African American/Spanish female police officer ever hired by the Village of Ossining. I also was the first to formally file a EEOC charge against the Village of Ossining Police Department. To date, there is still not a African-American female police officer working at that department. Since then over 13 officers have been hired. Do you understand what it was like working for over 21 years in a male dominated predominately white male para-military agency? What was done to me should not go unpunished. The civil rights of any person should be thoroughly investigated to the highest level. The DOJ is the highest level and I am entitled to my due process. The DOJ has the responsibility to bring these institutions to judgement.

I ask that you review my case. All of the above points mentioned above were documented and plenty more. Of allegations there was a 71 point rebuttal acknowledging the allegations and reasoning. That rebuttal was answering directly by the Chief of Police in his own forehand. I have copies of everything document, emails, evidence documents submitted to the EEOC which I can quickly forward to your attention.

I appreciate your response. Also note that I do not, nor did I at the time of the letter of determination have legal representation. The EEOC and the DOJ are my representation in this matter. I do not feel that I should not be sent away from a case that the EEOC has had for the past 4.5 years.

Marvise D. Rennalls

On Wednesday, December 4, 2024 at 11:18:27 AM EST, Ferguson, Karen (CRT) <karen.ferguson@usdoj.gov> wrote:

Good morning,

The subject letter is attached. The 90-day period begins upon receipt. Please respond to this email and acknowledge receipt.

Karen L. Ferguson

**Civil Rights Analyst**

**4 Constitution Square**

**150 M Street, N.E., Room 9.514**

**Washington, DC 20530**

**202.598.5038**



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## New York District Office

33 Whitehall Street, 5ᵗʰ Floor
New York, NY 10004-2112
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
New York Direct Dial: (929) 506-5270
FAX (212) 336-3625
Website: www.eeoc.gov

**Charging Party**
Marvise Rennalls
christylove155_08@yahoo.com

**Respondent**
Attn.: Kevin Sylvester
Village of Ossining Police Department
88 Spring Street
Ossining, NY 10562
ksylvester@ossiningpolice.com

**Respondent's Attorney**
Jaclyn G Goldberg
Keane & Beane, P.C.
445 Hamilton Ave., Suite 1500
White Plains, NY 10601
jgoldberg@kblaw.com

## DETERMINATION
EEOC Charge No: 520-2020-04854

On behalf of the U.S. Equal Employment Opportunity Commission ("Commission"), I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964 as amended (Title VII) and the Americans with Disabilities Act of 1990, as amended (ADA). The Respondent is an employer within the meaning of Title VII and the ADA. All requirements for coverage have been met.

Charging Party, a Hispanic, African American female alleges, upon returning from approved sick leave, she was informed (October 8, 2019) that a fitness for duty evaluation was needed, removed from the Spanish translation list, and that she was (February 14, 2020) being placed on an "chronic sick leave" list, and denied overtime opportunities (Early July 2020). There were COVID-19 related absences and other absences which were approved. Charging Party further alleges previously employed females were targeted and forced to resign as a high-ranking Official was known to harass females and targeted the women of color for unwarranted discipline because of their gender, female.

Respondent denies discriminating against Charging Party. Respondent asserts that the fitness for duty examination(s) were carried out in compliance with the provisions of the Collective Bargaining Agreement. In reference to the COVID-19 related absences, the Respondent's official(s) assert that Charging Party did not share that she had a disability. One high-ranking decision maker claims he first learned of her medical condition with the filing of this EEOC complaint. In terms of the lack of opportunity for overtime, Respondent cites that non-desk duty officers temporarily assigned to the desk cannot perform the role of that position making those officers ineligible for overtime. Respondent claims that Charging Party was removed from the Spanish speaking officers list accidentally, but once notified, it immediately sent her the proper

paperwork to be added to the list. Despite being added to the translation list, Respondent reminded Charging Party that her modified duty status prohibited her from interacting with the public which meant that she would not be called upon for translation services.

The investigation revealed that credible witnesses corroborated Charging Party's claims of sex, (gender- female), race (Black) and national origin (Hispanic) bias. Charging Party was a victim of unwanted comments in that Respondent's Non-Black and Non-Hispanic Official was heard stating that she [Charging Party] was "useless', and that he was going to push her [Charging Party] out or, that she [Charging Party] "could do nothing" because she is a Hispanic female. Charging Party was subjected to unlawful harassment solely because she is a Non-White/female and received less favorable terms and conditions of her employment, all-in violation of Title VII.

The Commission makes no finding about the other basis, issue(s) alleged or construed to have been alleged in this charge.

Based on the above, Respondent's asserted defense does not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that Respondent has discriminated and retaliated against Charging Party based on race, national origin, and sex.

This determination is final. The statute requires that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion. Having determined that there is reason to believe that violations have occurred, the Commission now invites Respondent to join with it in an effort toward a just resolution of this matter. Enclosed is a letter outlining the proposed terms of conciliation. Disclosure of information obtained by the Commission during the conciliation process may only be made in accordance with the statute and the Commission's Procedural Regulations.

If Respondent declines to enter conciliation discussions, or when the Commission's representative is unable to secure an acceptable conciliation agreement, the Director shall so inform the parties, advising them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission:

Timothy Riera

Digitally signed by Timothy Riera
Date: 2023.09.11 15:19:44 -04'00'

Date _____

_____
Timothy Riera
Acting District Director
New York District Office

Re: Charge No. 520-2020-04854

From:  marvise rainey (christylove155_08@yahoo.com)

To:    silvia.deng-batista@eeoc.gov

Date:  Monday, January 23, 2023 at 01:47 AM EST

Silvia Deng-Batista
Federal Investigator
U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

Investigator Deng-Bautista,

In response to your request on Jan. 20, 2023 regarding my Case: 520-2020-04854:

I am requesting $4.0 million dollars.  I had every intention of working till retirement age.  I had no intention of leaving a career that I was dedicated to and loved.

Pain and Suffering, Loss

What I was subjected to has had a devastating affect on my life. The detriment has affected every aspect of my life. My hair fell out, my health has significantly deteriorated already suffering from an auto-immune disorder.  I lost a relationship. All the aforementioned are a direct result of my experience.
My life was full, now it is empty. I was violated.  The experience has created feelings of low self-esteem and doubt in my abilities as a person. The fact that I worked in police environment as the only African-American female made it challenging enough. The damage is irrevocable.

The above amount includes the contractual provisions that are still binding. The loss of those provisions has created a serious detriment to my livelihood.

Ms. Marvise Rennalls
609 Depew Street
Peekskill, New York 10566
email: Christylove155_08@yahoo.com
Contact: 914-354-7498

On Friday, January 20, 2023 at 05:44:35 PM EST, marvise rainey <christylove155_08@yahoo.com> wrote:

Good Evening Investigator,

I will submit the email with the indicating the type(s) of relief by early next week.

I appreciate your time and effort during this investigation thus far, please enjoy your weekend.

Marvise Rennalls

Re: 520-2020-04854
On Friday, January 20, 2023 at 04:17:34 PM EST, SILVIA DENG-BATISTA <silvia.deng-batista@eeoc.gov> wrote:

Equal Employment Opportunity Commission
New York District Office
Received 8/12/2020

520-2020-04854

| CHARGE OF DISCRIMINATION | | AGENCY | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | | ☐ FEPA<br>X EEOC | |

| New York State Division of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| NAME (Indicate Mr., Ms., Mrs.)<br>Ms. Marvise Rennalls | | | TELEPHONE (Include Area Code)<br>914-382-1655 |
|---|---|---|---|
| STREET ADDRESS<br>73 Spring Street, Apt 3E | CITY, STATE AND ZIP CODE<br>Ossining, NY 10562 | COUNTY<br>Westchester | DATE OF BIRTH<br>9/6/65 |

**NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME** *(If more than one list below.)*

| NAME<br>Village of Ossining Police Dept. | NUMBER OF EMPLOYEES, MEMBERS<br>60+ | TELEPHONE (Include Area Code)<br>914-941-4099 |
|---|---|---|
| STREET ADDRESS<br>88 Spring Street | CITY, STATE AND ZIP CODE<br>Ossining, NY 10562 | COUNTY<br>Westchester |

| NAME | | TELEPHONE (Include Area Code) |
|---|---|---|
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| X RACE ☐ COLOR X SEX ☐ RELIGION X NATIONAL ORIGIN<br><br>X RETALIATION ☐ AGE X DISABILITY ☐ OTHER (Specify) | EARLIEST 10/18/19 LATEST<br><br>☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

Please see Rider to EEOC Charge of Discrimination annexed hereto.

8/11/2020

| X  I also want this charge filed with the EEOC.<br><br>I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY (when necessary for State and Local Requirements)<br><br>*Frank Maximus*<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct<br><br>*Marvise Rennalls*<br>DATE (signature) 8/11/20 | Charging Party | SIGNATURE OF COMPLAINANT<br><br>*Marvise Rennalls*<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

Frank Maximesano Notary Public State of New York Registration No. 01MA5056602 Qualified in Westchester Commission Expires April 3, 2021

*Marvise Rennalls v. Village of Ossining Police Department*
*EEOC Case No.: 520-2020-04854*

## DECLARATION OF MARVISE RENNALLS

I, MARVISE RENNALLS, Charging Party in the above-captioned matter before the Equal Employment Opportunity Commission ("EEOC"), make the following statement:

1.      I am the Charging Party in the above-captioned matter before the EEOC, asserting that I was discriminated against by Respondent Village of Ossining Police Department (the "OPD") on the basis of my disability (or perceived disability), in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290 *et seq.*; and that I was discriminated against on the basis of my gender, race, and national origin, in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; and the NYSHRL.

2.      On or about December 22, 2020, I received the OPD's December 18, 2020 Position Statement.

3.      I submit this declaration in order to present facts rebutting the contentions contained in the OPD's Position Statement.

4.      During my September 10, 2019 conversation with Lieutenant James Montague, I stated: "I had my medication adjusted again."

5.      During that September 10, 2019 conversation, I did not mention the term "psych medications" to Lt. Montague.

6.      Lt. Montague also stated that Chief of Police Kevin Sylvester was requesting that I provide a doctor's note, indicating my estimated date of return to work.

7.      I provided the OPD with a note from Naveed Iqbal, M.D., stating only the following: "Marvise Rennalls (DOB – 09/06/1965) is under my care since September 2015 – current. Due to her conditions, she will return to work by October 1, 2019. Thank you for your attention in this matter. Due to her conditions, she will return to work by October 1, 2019. Thank you for your attention in this matter." See Exhibit M to the OPD's December 18, 2020 Position Statement.

8.      During an October 18, 2019 meeting, I was ordered by Chief Sylvester to attend a Fitness for Duty Examination.

9.      Several times during this meeting, I asked Chief Sylvester why I was being sent to a Fitness for Duty Examination.

10.      Each time, Chief Sylvester would simply point to the September 10, 2019 physician's note.

11.      Throughout the COVID-19 pandemic, there was a constant shortage of masks in the OPD headquarters.

12.      Finding a mask was like finding a needle in a haystack.

13.      When I explained to Captain Giorgio that the OPD was not complying with COVID safety protocols, Captain Giorgio never stated to me that there were N95 masks available in his office.

14.      Chief Sylvester himself typically walked around the police headquarters without a mask, thereby encouraging others to do the same.

15.      I observed that most police officers did not wear masks inside headquarters.

2

16.    The communications room, where I work, does not have windows, so there is very little ventilation.

17.    If the OPD did have some safety policies regarding mask wearing or temperature checks as it claims, they were not actually followed in practice.

18.    I have been on the OPD's Second Language List since its inception in 2005.

19.    I know that Chief Sylvester was aware that I was on the list because Chief Sylvester was in the PBA when the PBA voted for the stipend for officers on the Second Language List.

20.    The stipend was a big issue for the PBA during collective bargaining at the time.

21.    I acted as a translator for Chief Sylvester on many occasions through the years when he served in the rank of Sergeant, Lieutenant, and Captain, before he became the Chief.

22.    I am a trained hostage negotiator and a DARE Officer, who has taught in all of the Ossining elementary schools.

23.    I helped to run an after school children's program on behalf of the OPD.

24.    Over the years, I have received numerous commendations and thank you letters from the public for my work as an OPD police officer.

25.    On March 16, 2016, I was informed by Al Ross, a resident of The Village of Ossining, that earlier in the day, at a community breakfast, Chief Sylvester falsely informed community members that I would be retiring at the end of the year.

26.    In 2018, I heard Chief Sylvester make an announcement in the patrol briefing to other police officers stating that they should not speak with me because I may be recording the conversation and may have a lawyer.

3

27.    I have been informed by my physicians that, as a result of my Graves disease, which is an autoimmune thyroid condition, I am immunocompromised.

28.    Lt. Montague was assigned by Chief Sylvester specifically to counsel me regarding my sick leave.

29.    Lt. Montague and I have been close colleagues for years, and over time, I have shared my full medical history regarding Graves disease and resulting thyroid condition with him.

30.    With a reasonable accommodation of the OPD and my co-workers actually following COVID safety protocols, including social distancing and mask mandates within the OPD headquarters, I would have been able to perform the essential duties of my position.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Dated: January 22, 2021

_____
Marvise Rennalls

4

Equal Employment Opportunity Commission
New York District Office
Received 8/12/2020

### RIDER TO EEOC CHARGE OF DISCRIMINATION
#### *Marvise Rennalls v. Village of Ossining Police Department*

1.     Ms. Marvise Rennalls files this Charge of Discrimination against the Village of Ossining Police Department ("the Department") asserting that she was discriminated against on the basis of her disability (or perceived disability), and retaliated against for raising complaints about such disability discrimination, in violation of the Americans with Disabilities Act ("ADA"), 29 U.S.C. §§ 621 *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law §§ 290 *et seq.*; and that she has been discriminated against on the basis of her gender, race, and national origin, in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; and the NYSHRL.

2.     Officer Rennalls is a black woman.

3.     She was born in the United States but was raised in Venezuela.

4.     She is known by the Department to be Spanish-speaking, as since 1996, she has been on the Spanish-speaking police officers list that is used to assign police officers to certain duties, including translating documents and interpreting for witnesses.

5.     At the times referenced herein, Officer Rennalls was one of only two minority female police officers with the Department, which has 60 police officers.

6.     Officer Rennalls is disabled.

7.     Officer Rennalls is diagnosed with and receives treatment for Graves disease, a thyroid condition.

8.     Officer Rennalls is diagnosed with and receives treatment for depression and anxiety.

1

Equal Employment Opportunity Commission
New York District Office
Received 8/12/2020

9.  Officer Rennalls' ability to perform the essential duties of her position has never been impacted by any of her medical or mental health conditions, and she has never requested a disability accommodation.

10.  Since 1996, Officer Rennalls has been a police officer in Westchester County, New York for 24 years.

11.  Since 2000, she has worked as a police officer for the Village of Ossining Police Department.

12.  Officer Rennalls has performed her position effectively at all times.

13.  In or about 2016, Kevin Sylvester became the Chief of the Department.

14.  Since Chief Sylvester became the Chief of the Department, he has demonstrated his animus toward Officer Rennalls and his intent to either terminate her employment or force her to resign/retire.

15.  For example, Chief Sylvester, without any basis, took Officer Rennalls off the Spanish-speaking officers civil service list. The list enables Officer Rennalls to earn additional compensation through special translating and interpreting assignments. Officer Rennalls had to enlist the help of the Personnel Department to get back on the list.

16.  The union contract/collective bargaining agreement between the Village of Ossining and the Village of Ossining Policy Benevolent Association, Inc. ("PBA") provides for unlimited sick time for police officers. Specifically, Article X, Personal Leave, Bereavement Leave, Sick Leave, section 3, provides that "Paid injury or sick leave will be advanced to the members on an as-needed basis. The Chief may require a doctor's certificate whenever he/she has reason to believe that sick time is being abused."

17.  Beginning on September 3, 2019, Officer Rennalls was out on sick leave.

2

Equal Employment Opportunity Commission
New York District Office
Received 8/12/2020

18.    On or about September 10, 2019, Officer Rennalls was contacted by Captain Giorgio, who informed her that Chief Sylvester needed a doctor's note from her since she had been out for a week.

19.    On September 10, 2019, Dr. Naveed Iqbal, who is Officer Rennalls' psychiatrist, faxed to the Department a letter, dated September 10, 2019. The letter was on letterhead from Advanced Bio-Behavioral Sciences and stated only, "Marvise Rennalls (DOB – 09/06/1965) is under my care since September 2015 – current. Due to her condition, she will return to work by October 1, 2019. Thank you for your attention to this matter. Sincerely,  Naveed Iqbal, MD"

20.    The note did not state Officer Rennalls diagnoses or symptoms, nor did it state that Dr. Iqbal is a psychiatrist.

21.    Officer Rennalls had not disclosed her mental health conditions to the Department.

22.    On October 1, 2019, Officer Rennalls returned to work and successfully completed a full day of firearms training.

23.    After October 1, 2019, Officer Rennalls returned to her regular patrol duty.

24.    There were no unusual incidents and no problems or concerns with Officer Rennalls' performance of her duties at any time, including between October 1, 2019 and October 18, 2019.

25.    On October 18, 2019, while she was at home on her day off, Officer Rennalls was contacted by Captain Giorgio, who advised her that the Chief Sylvester requested that she come to his office. When Officer Rennalls arrived at Chief Sylvester's office, the PBA union president (Joseph Spinelli) and Captain Giorgio were also present. Chief Sylvester gave Officer Rennalls a letter with attachments.

3

Equal Employment Opportunity Commission
New York District Office
Received 8/12/2020

26.    The October 18, 2019 letter from Chief Sylvester stated in part, "Recently, you utilized eighteen (18) consecutive sick days spanning September 3, 2019. Your documentation indicated that it was related to a mental health issue. It is my duty to consider the wellbeing of every office as well as the safety of the community. Accordingly, I am ordering you to attend a Fitness for Duty Evaluation. You must cooperate with this evaluation and answer all questions fully and honestly. This is not a counselling session but a formal evaluation that will result in a report issued to the department on your fitness for duty." The letter provided instructions for attending the Fitness for Duty Evaluation. The letter also directed Officer Rennalls to sign an Authorization for Release of Health Information (HIPAA Release) form by October 21, 2020. The letter also stated that "Effectively immediately you have been place on modified duty and all firearms should be turned over to the Department."

27.    Officer Rennalls had never exhibited any behavior that would call into question her ability to safely and effectively perform the duties of her position or that would otherwise justify this Fitness for Duty Evaluation.

28.    After reading the October 18, 2019 letter, Officer Rennalls asked, "what is this about?" Chief Sylvester answered, "well, your doctor's note". Chief Sylvester advised her that she must turn in her weapons and report for the fitness for duty evaluation in Albany, and that he would advise her of the date and details. Officer Rennalls against asked, "Why? Did I do something I unaware of?", and he responded that it was just because of her doctor's note from Dr. Iqbal.

29.    Later that day, Captain Giorgio escorted Officer Rennalls back to her residence and confiscated her duty weapon and her personal firearm.

4

Equal Employment Opportunity Commission
New York District Office
Received 8/12/2020

30. Officer Rennalls against asked Captain Giorgio, "what is this about?" Captain Giorgio responded that he could not tell her but "maybe it is something regarding PO [Polic Officer] Zambrano".

31. Officer Andrea Zambrano and Officer Rennalls were the only female minority police officers in the Department, which has 60 police officers.

32. On that same day, October 18, 2019, Officer Zambrano was also summoned to Chief Sylvester's office, stripped of her weapons, and directed to attend a Fitness for Duty Evaluation. (Officer Zambrano was ultimately sent for a medical examination, suspended without pay, and then forced to resign in or about early July 2020).

33. During Officer Rennalls' 20-year tenure with the Department, she is not aware of any other officers being sent for Fitness for Duty Evaluations.

34. A white/Caucasian male officer who had addiction issues was only sent to rehab, and was not required to undergo a Fitness for Duty Evaluation at any point.

35. Since October 18, 2019, Officer Rennalls has been removed from patrol duty, and assigned only to desk/dispatch duty.

36. Being assigned to desk/dispatch duty significantly limits an officer's ability to work overtime and earn additional compensation.

37. On October 21, 2019, Officer Rennalls provided the signed HIPAA form for release of her medical and mental health records.

38. On November 25, 2019, Officer Rennalls attended the Fitness For Duty Evaluation with Dr. Kelley at Public Safety Psychology, 18 Corporate Woods Blvd, Albany, NY 12211.

39. At the evaluation, Dr. Kelley acknowledged receiving Officer Rennalls medical and mental health records. However, Dr. Kelley mumbled something to the effect of "Chief wants you

5

Equal Employment Opportunity Commission
New York District Office
Received 8/12/2020

to sign another one for your family therapist [who treats Officer Rennalls' autistic daughter], in order to complete the evaluation." Officer Rennalls refused this request because it was irrelevant and abusive.

40.    Since the evaluation, Officer Rennalls has repeatedly requested to receive a copy of the report or results of her Fitness for Duty Evaluation, but the Department has refused.

41.    On December 18, 2019, the PBA filed a Demand for Arbitration with the American Arbitration Association against the Village of Ossining, challenging the Department's practice of placing officers on "the Chronic Sick List for having a 'high amount of sick leave'" which caused them to be "prohibited from overtime opportunities, secondary employment and other contractual benefits in violation of the collective bargaining agreement and/or department rules."

42.    On February 14, 2020, Chief Sylvester walked into the dispatching room and handed Officer Rennalls a white envelope, saying it was nothing, and then left.

43.    The February 14, 2020 letter stated, in pertinent part,

"On October 18, 2019, you received a letter from this office ordering you to attend a Fitness for Duty Evaluation. In that letter was an order to sign a HIPPA [sic] Release form to allow for the release of pertinent medical and mental health records including pharmacy records. That letter indicated that your records were to be forwarded to Dr. David Kelley at Public Safety Psychology, PLLC. On various dates, this department has notified you that your records have not been received.

This letter is to clarify that the order stands. You ordered to sign a HIPAA [sic] Release form to allow for the release of pertinent medical and mental health records including pharmacy records. While some records were received from Dr. Iqbal, Dr. Kelley has indicated that he will require records from your counselor, Dr. Marie-Elena Grosett. Those records must be delivered

6

to Dr. Kelley no later than 12:00 hours on Monday February 24, 2020. A failure to comply with this directive may result in disciplinary action being taken."

44.     Also on February 14, 2020, Officer Rennalls was advised that she was being placed on the "chronic sick list", which is allegedly for officers who have an unusual amount of sick time over an extended period in the Chief's determination. (Placement on the "chronic sick list" prohibits an officer from working overtime hours for at least 6 months, which limits the officer's ability to earn additional compensation.)

45.     Also on February 14, 2020, the PBA union filed an Improper Practice Charge against the Village of Ossining with the State of New York Public Employment Relations Board, alleging a violation of New York Civil Service Law section 209-a.1(d). The Improper Practice Charge stated, "The procedures used to determine whether an employee is physically and psychologically fit to perform the duties of a job ... are terms and conditions of employment and mandatorily negotiable as such. Prior to the Chief's letters of October 18, 2019 and February 14, 2020 there was no work rule, policy or practice requiring that unit employees provide their medical records, or undergo medical and psychological testing to determine continued fitness for duty. The imposition of a fitness for duty policy and the requiring of employees to sign HIPPA [sic] forms and provide confidential medical information is a unilateral action regarding a mandatory subject of bargaining and therefore the Village is in violation of § 209-a.1(d)."

46.     On February 19, 2020, the PBA filed an Application for Injunctive Relief against the Village of Ossining with the New York State Public Relations Board, which stated in part that "The Chief's February 14, 2020 letter demanding that Officer Rennalls issue a HIPPA [sic] release and provide confidential information from her private therapist is an improper practice because the Village has never negotiated such a drastic disclosure policy with the PBA. Moreover,

7

Equal Employment Opportunity Commission
New York District Office
Received 8/12/2020

importantly, if injunctive relief is not sought by PERB and granted by the Court, it will be impossible to undo the negative consequences of this improper practice. ... Once the disclosure of Rennalls' confidential information is made to the Village and others, the bell cannot be un-rung. The Village must be directed to immediately rescind its order demanding the provision of confidential information."

47. Subsequently, the Village withdrew its request for release of Officer Rennalls medical records until the "litigation is resolved", which resolved the application for injunctive relief.

48. In or about early July 2020, Officer Rennalls asked Chief Sylvester if she could work some overtime assignments to earn additional compensation. Chief Sylvester denied this request and instead informed her that her status on the "chronic sick list" would be extended until the end of December 2020, because Officer Rennalls had taken one sick day.

49. From about mid-March through mid-April, and again from mid-July 2020 through the present, Officer Rennalls has been out on sick leave due to the fact that she is immunocompromised and at high risk of COVID-19 as a result of her Graves disease thyroid condition and other medical conditions, and because the Department has failed to take adequately precautions to ensure her safety, in that social distancing, mask-wearing, and other safety measures are not enforced.

50. Since Officer Zambrano was forced to resign in or about early July 2020, Officer Rennalls is now the only minority female officer in the Department.

51. As of the date of this charge, the Department refuses to provide Officer Rennalls with the results or report of the Evaluation, reassign her back to patrol duty, return her weapons to her, or remove her from the "chronic sick list."

8

Equal Employment Opportunity Commission
New York District Office
Received 8/12/2020

52.    At all times relevant herein, Officer Rennalls has been an "employee" within the meaning of Title VII, the ADA, and the NYSHRL.

53.    At all times relevant herein, the Village of Ossining Police Department has been an "employer" and a covered entity within the meaning of Title VII, the ADA, and the NYSHRL.

54.    As a result of the conduct detailed above, Officer Rennalls has suffered emotional distress, mental anguish, and loss of enjoyment of life.

55.    Officer Rennalls seeks damages incurred from being denied opportunities to earn overtime and other additional compensation as a result of being assigned to desk/dispatch duty and being placed on the "chronic sick leave list," damages for emotional distress, punitive damages, interest, and attorneys' fees and costs.

9

LIST OF ATTACHED DOCUMENTS SUBMITTED WITH COMPLAINT:

MARVISE D. RENNALLS V. VILLAGE OF OSSINING

- 12/4/2024 RIGHT TO SUE NOTICE ISSUED BY DOJ

- 12/5/2024 EMAIL CORRESPONDENCE TO DOJ (KAREN FERGUSON- CV ANALYST) ADVISING

  THAT THE RTS WAS INACCURATE. PLANTIFF ADVISED DOJ THAT THE ATTORNEY/FIRM ON

AND HINDERING PROSECUTION CHARGES IN JUNE OF 2023 AND WAS NOT A PARTY TO THE CASE.

- 12/13/2024 RE-ISSUED RIGHT TO SUE